*Via ECF* April 8, 2024

The Honorable Trina L. Thompson
San Francisco Courthouse, Courtroom 9, 19 Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: **MPH Techs. Oy v. Apple Inc., No. 3:18-cv-05935-TLT (N.D. Cal.)**
              **Joint Discovery Dispute Letter Regarding MPH's Document Requests**

Dear Judge Thompson:

      Pursuant to the Court's Civil Standing Order, Plaintiff MPH Technologies Oy ("MPH") and Defendant Apple Inc. ("Apple") respectfully submit the following joint letter regarding their discovery dispute relating to documents requested by MPH on May 1, 2023. The parties met and conferred about the requested documents on August 17 and August 22, 2023 and exchanged lengthy correspondence between August 10, 2023 and January 12, 2024. Apple contends that this letter is largely moot as Apple has already produced documents responsive to all but one request, and also premature because many "disputes" would be relevant only if the Court were to grant MPH leave to amend its infringement contentions to add doctrine of equivalents theories (*see* ECF 103). Apple's February 29, 2024 supplemental responses to the requests are attached.

**I.**       **MPH'S POSITIONS**

      MPH respectfully seeks an order compelling Apple to produce the following documents:

      **A.**       **Apple Should Produce Documents on Usage of the Accused Instrumentalities[1]**

      MPH's Request for Production of Documents No. ("RPD") 12 seeks documents sufficient to show "usage of the [accused] Apple Products and Services." [2] RPD 12 is relevant to liability and damages, including evincing acts of infringement as well as *Georgia-Pacific* factors 8 and 11 for a hypothetical reasonable royalty negotiation. Apple has refused to produce responsive documents.
      Apple states that it has not located responsive documents about usage of the accused Always On VPN, Handoff, Universal Clipboard, iPhone Cellular Call Relay, iPhone Text Message Forwarding, and encryption for Apple Watch apps with streaming data. Regarding Always On VPN, Apple has stated that it "does not track usage information," but RPD 12 is not limited to "tracked usage information." Apple has also stated that it is "not aware of any internal use of 'Always on VPN' by Apple," but RPD 12 is not limited to internal use. RPD 12 seeks *any*

---

[1] MPH intended to include RPD 85 in the present letter. However, for the first time on March 14, 2024, after months of correspondence, Apple represented that it has not used and does not use Always-On VPN for its own business use and therefore has no responsive documents. Based on that representation, MPH is not pressing the issue here, but reserves the right to do so, if necessary.
[2] MPH currently does not seek discovery regarding its '581 patent assertions, but reserves its right to do so, including if the Court grants MPH's motion for reconsideration on the '581 patent.

documents showing that *anyone* is using or has used Always On VPN, which may include customer contracts, support logs, case studies, or other data available from Apple's provision of enterprise services through platforms such as Apple School Manager, Apple Business Manager, and Apple Business Essentials. Apple surely has documents showing that *someone* is using or has used Always On VPN, given that Apple implemented it nearly a decade ago and continues to offer it as part of its business today. Apple has provided no explanation as to why it has no usage information about the rest of the accused instrumentalities. Notably, Apple's response to RPD 12 states that "Apple will produce summary data." To the extent Apple "did not locate responsive documents" because it limited its search to "summary data" on the accused instrumentalities, Apple's search was unreasonable because RPD 12 is not limited to "summary data."

### B.  Apple Should Produce Documents on Projected Sales and Profitability

RPDs 26 and 28 seek documents "sufficient to show [the projected unit and dollar volumes of sales/projected profitability] of the Apple Devices in the United States through September 2025." September 2025 is when the term of MPH's last-expiring patent ends. Apple agreed to produce "documents sufficient to show the forecasted unit sales and revenue [and forecasted profitability] of the accused Apple Devices," but to date, Apple has only produced general market sales forecasts generated by a third party, which do not include profit projections. RPDs 26 and 28 seek (1) any recent projections of sales and profitability of the accused products though patent expiration and (2) financial projections from *around the time of a hypothetical reasonable royalty negotiation between MPH and Apple* (roughly 2014 to 2017), which are highly relevant to damages, including *Georgia-Pacific* factors 6, 8, 11, 13, and 15. *See Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313, at *6 (N.D. Cal. May 24, 2006) (sales projections of accused products relevant to patent damages). To the extent Apple generates projections internally, Apple should produce its own information rather than that of an independent third party market research firm, including projections on both sales and profitability from 2014 through 2025. If Apple later represents that it is not able to locate such documents, it should be barred from contesting MPH's projections on unit and dollar volumes of sales of the Apple Devices and on profitability at trial.

### C.  Apple Should Produce iMessage-Related Financial Information

RPD 30 seeks financial information from iMessage apps, including ApplePay and any third-party applications, or from any other iMessage accessories, in-app purchases, or in-app advertising. This information is relevant to damages, specifically, *Georgia-Pacific* factors 6, 10 and 11, to the extent that use of the accused iMessage service generates sales and revenue from Apple's other collateral and convoyed products and services. Accordingly, the requested information will be highly relevant to the hypothetical reasonable royalty negotiation.

Apple has represented that it "*identified only two sources of potential revenue through iMessage that Apple tracks: Sticker purchases and games purchases done directly through iMessage. Apple is investigating the availability of such revenue information through these purchases and the feasibility and reasonableness of production to the extent such information exists.*" Despite representing that it "tracks" this information, Apple's vague qualifications as to "availability," "feasibility," and "reasonableness," offer no assurance to MPH that Apple will produce the requested information. In fact, Apple has since backtracked on its representation and

stated that it has "not been able to locate data that track revenue for games purchases." MPH believes that other iMessages apps, such as "Apple Cash" and "Starbucks Gift" also likely provide revenue to Apple and are directly available through the accused iMessage service. At most, Apple has produced one page on "App Store Retained Commissions." Apple should be ordered to promptly produce all of the requested financial information in its possession.

### D. Apple Should Produce Documents Identifying Programs for Implementing "Always On VPN" and Related Financial Information

RPD 90 seeks documents showing all services, software, tools, programs, and subscriptions sold, licensed, or otherwise offered by Apple for end users to configure, activate, or supervise devices for using the accused Always On VPN. RPD 91, in turn, seeks documents showing all revenue Apple receives through the sale, licensing, or subscription of those software, services, and subscriptions. This information is relevant to liability because, as set forth in MPH's infringement contentions, Apple is providing such software and services, which are specifically designed to enable its customers and end users to implement the accused Always On VPN. This information is also relevant to damages because Apple generates revenue by providing such software/services and because of *Georgia-Pacific* factors 6, 10 and 11.

Apple has contested the relevance of such documents. But MPH has plainly identified these services and software in its infringement contentions as used to configure and supervise Apple devices for Always On VPN. Apple has also contested the relevance of related financial information, stating that "just because Apple sells Apple Essential does not mean that Apple Essential was purchased to enable VPN." But, that is exactly the type of argument that Apple made and another court in this District rejected in *Aylus Networks Inc. v. Apple Inc.*, No. 3:13-cv-04700-EMC, Dkt. 120 (N.D. Ca. Apr. 9, 2015) ("To the extent that Airplay, no matter how small its role, draws more consumers to purchase video content/video games through the iTunes store so that they can, through their iPod Touch, iPad, or iPhone, direct that content to an accused AppleTV for display on a home television screen, those sales could shape the reasonable royalty analysis."). Here, the accused Always On VPN is configured and supervised using these software and services, so MPH is entitled to discovery on their value. Apple does not contest that these software and services can be, and indeed are, used to configure and supervise the accused Always On VPN functionality. Apple's reliance on *Thought, Inc. v. Oracle Corp.* is misplaced because MPH has identified specific products relevant to its royalty analysis—i.e., those offered by Apple for end users to configure, activate, or supervise devices for using the accused Always On VPN—and has articulated how sales of these specific products are connected to sales of the infringing products—i.e., the specific products are used to configure, activate, and supervise Always On VPN.

Accordingly, Apple should be ordered to produce all documents responsive to RPDs 90 and 91. Although Apple's recent supplemental response to RPD 90 states that Apple will eventually produce some documents, Apple has not agreed to produce documents sufficient to show (1) all tools and/or subscriptions sold, licensed, or otherwise offered by Apple for users to configure, activate, and/or supervise devices utilizing Always On VPN; or (2) all services, software, and/or programs sold, licensed, or otherwise offered by Apple for users to activate and/or supervise devices utilizing Always On VPN. For RPD 91, Apple still refuses to produce *any* responsive documents.

## II.    APPLE'S POSITIONS

The Court should not order Apple to produce additional documents. Apple has produced over 830,000 pages of documents thus far (in addition to voluminous source code). For all but one RPD at issue, Apple has already produced the responsive documents that it located after a reasonable search.[3] Apple has advised MPH that it has conducted a reasonable search and produced responsive documents and that it is not withholding non-privileged documents. MPH's naked assertion that Apple is withholding documents does not justify this discovery letter.

For the last issue (RPD 91), the Court should deny MPH's requested discovery because it is irrelevant and not proportional to the needs of the case. MPH cannot obtain discovery into non-accused software that is independent of the accused products. MPH's position is inconsistent with Federal Circuit and Northern District of California case law (including the *Aylus* case on which MPH relies).[4]

### A. Apple Has Produced Documents Responsive to RPD 12

RPD 12 seeks documents sufficient to show usage of Apple's accused technologies. Apple produced documents sufficient to show usage of iMessage and FaceTime. That Apple is producing "summary data" is not nefarious, as MPH claims. The RPD itself seeks documents "sufficient to show" usage. The summary data that Apple has produced—which is how Apple stores the data in the ordinary course of business—is just that. MPH offers no argument otherwise and has not met and conferred with Apple on this issue.

For the remaining accused technologies (Always-on VPN, Handoff, Universal Clipboard, iPhone Cellular Call Relay, iPhone Text Message Forwarding, and encryption for Apple Watch apps with streaming data), Apple performed a reasonable search and did not locate responsive documents. MPH offers no basis for its position that Apple is withholding documents and has not met and conferred with Apple on that position. The Court should therefore deny MPH's requested relief. *See Facet Techs., LLC v. LifeScan, Inc.*, No. 2:22-cv-1717, 2023 WL 4206111, at *2 (C.D. Cal. May 25, 2023) (denying motion to compel as moot where party stated that it produced responsive documents located after reasonable search).

### B. Apple Has Produced Documents Responsive to RPDs 26 and 28

RPDs 26 and 28 seek documents sufficient to show Apple's projected sales and profitability of accused products through September 2025. Apple has already produced documents sufficient to show projected sales (both units and revenues). That the projections were made by third parties instead of Apple itself is immaterial; the RPDs do not require internal projections. Regarding projected *profits*, Apple has not located responsive documents after a reasonable search. MPH's position that Apple is withholding documents is unsupported, and MPH has not met and conferred with Apple on that accusation. Thus, the Court should deny MPH's requested relief as moot.

MPH's position that the Court should preclude Apple from challenging any profitability

---

[3] In agreeing to produce responsive documents, Apple does not waive its objections to the requests (e.g., in the event MPH later asserts an unexpectedly broad interpretation of a request).

[4] Contrary to footnote 1, Apple informed MPH that it does not use Always-on VPN in prior discussions and provided a written representation of that fact on February 29, 2024.

projections that MPH later introduces is baseless and beyond the scope of this discovery motion.

### C. Apple Has Produced Documents Responsive to RPD 30

RPD 30 seeks documents sufficient to show financial information for Apple sales made through iMessage apps. Apple has already produced this information to the extent available and located in a reasonable search. MPH's apparent belief that other documents exist is unfounded. MPH has not met and conferred with Apple to discuss that belief and instead insisted on filing this discovery letter. Thus, MPH's requested relief should be denied as moot.

### D. Apple Has Produced Documents Responsive to RPD 90

RPD 90 seeks documents sufficient to show services, software, tools, programs, and/or subscriptions sold, licensed, or otherwise offered by Apple to configure, activate, and/or supervise devices capable of using Always-on VPN. Apple has produced these documents to the extent located in a reasonable search. MPH's assertion that Apple has refused to produce these documents is simply false. Thus, MPH's request once again should be denied as moot.

### E. RPD 91 Seeks Irrelevant Financial Information About Non-Accused Software

The Court should deny MPH's request to compel documents responsive to RPD 91. This request seeks Apple's revenues from the software just discussed with respect to RPD 90. These revenues (to the extent they exist) are irrelevant because the software is not an accused product. Moreover, production of the revenues would not be proportional to the needs of the case.

MPH incorrectly argues that the software is relevant under a convoyed sales theory. That argument rests on MPH's mistaken premise that "the accused Always On VPN functionality is configured and supervised using [the software], so MPH is entitled to discovery on their value." In fact, the software manages mobile devices regardless of whether they use Always-on VPN—a fact that MPH concedes. Because the software is independent of Always-on VPN, damages for convoyed sales are not recoverable. *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008) (prohibiting recovery of convoyed sales of non-accused products that "command a market value and serve a useful purpose independent of the patented product").

MPH's reliance on *Aylus* is misplaced. There, the plaintiff sought discovery on "sales of video and video games **using the accused products**." *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 2357685, at *4 (N.D. Cal. May 15, 2015) (emphasis in original) (distinguishing *Aylus* on this basis in considering convoyed sales argument for discovery); *Aylus Networks Inc. v. Apple Inc.*, No. 3:13-cv-04700-EMC, Dkt. 120, at 1 (N.D. Ca. Apr. 9, 2015) (discovery requests limited to sales "using the accused [products]"). But here, MPH's discovery requests are not limited to sales using Always-on VPN. MPH instead demands **all sales** of the software at issue, simply because the software "can be" used with Always-on VPN. That is far more than what *Aylus* allowed and akin to the discovery denied in *Thought*.

Therefore, the Court should deny MPH's request. *Thought*, 2015 WL 2357685, at *4 (denying discovery into sales of non-accused products); *see also BASCOM Glob. Internet Servs., Inc. v. AT&T Corp.*, No. 3:14-CV-3942-M, 2017 WL 11490077, at *2 (N.D. Tex. July 31, 2017) (same) (citing *Thought*, 2015 WL 2357685, at *4). Apple has already produced financial information for the accused products. Nothing more should be required.

                        Respectfully submitted,

Dated: April 8, 2024        By: */s/ Dragan Gjorgiev*
                                 Dragan Gjorgiev

                                 Attorneys for Plaintiff
                                 *MPH TECHNOLOGIES OY*

                                 Patricia L. Peden, Esq.
                                 BURKE, WILLIAMS & SORENSEN, LLP

                                 Christopher J. Lee (pro hac vice)
                                 David J. Sheikh (pro hac vice)
                                 Brian E. Haan (pro hac vice)
                                 Ashley E. LaValley (pro hac vice)
                                 Dragan Gjorgiev (pro hac vice)
                                 James D. Mitchell (pro hac vice)
                                 LEE SHEIKH & HAAN LLC

Dated: April 8, 2024        By: */s/ Ryan J. Malloy* (with permission)
                                 Ryan J. Malloy

                                 Attorneys for Defendant
                                 *APPLE INC.*

                                 BITA RAHEBI
                                 RYAN J. MALLOY
                                 ROSE S. LEE
                                 NIMA KIAEI
                                 MORRISON & FOERSTER LLP
                                 707 Wilshire Boulevard
                                 Los Angeles, California 90017-3543
                                 Telephone: (213) 892-5200
                                 Facsimile:  (213) 892-5454
                                 brahebi@mofo.com
                                 rmalloy@mofo.com
                                 roselee@mofo.com
                                 nkiaei@mofo.com

                                 RICHARD S.J. HUNG
                                 MORRISON & FOERSTER LLP
                                 425 Market Street
                                 San Francisco, California  94105
                                 Telephone: (415) 268-7000
                                 Facsimile:   (415) 268-7522
                                 rhung@mofo.com

**ATTESTATION**

      Pursuant to Civil L.R. 5-1(h)(3) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories.

Dated:  April 8, 2024                                        By:  */s/ Dragan Gjorgiev*
                                                                 Dragan Gjorgiev

                                                                Attorney for Plaintiff
                                                                *MPH Technologies OY*