UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MPH TECHNOLOGIES OY,<br><br>                    Plaintiff,<br><br>         v.<br><br>APPLE, INC.,<br><br>                    Defendant. | Case No.  18-cv-05935-TLT<br><br>**ORDER AMENDING PORTION OF ORDER CONSTRUING CLAIMS AS TO THE '581 PATENT CLAIMS 6, 7, AND 8**<br><br>Re: ECF Nos. 109, 118 |

On June 21, 2024, the Court granted ECF No. 118, MPH's Request to Revise the Court's Order Construing the '581 Patent Claims 6, 7, and 8 under Fed. R. Civ. P. 54(b). Accordingly, this Order supplants the portion of the Order regarding the '581 Patent Claims 6, 7, and 8.

U.S. Patent No. 7,937,581 ("the '581 patent") claims "[a] method for ensuring secure forwarding of a message in a telecommunication network, having at least one mobile terminal and another terminal and a security gateway there between."  ECF No. 95-7 (Exh. 6 to Opening Brief ("the '581 patent"), 10:50-53), at 12-13.

In the Order Construing Claims, the Court finds that the claim language for the '581 Patent Claims 6, 7, and 8 is indefinite. ECF No. 109 (Order Construing Claims), at 16-17.  The Court relies on *Biosig Instruments, Inc. v. Nautilus, Inc. (Nautilus 2014)*, 572 U.S. 898, 898-99 (2014) and *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526–27 (Fed. Cir. 2020). *Id.* In its Order, the Court states:

**"Establishing a secure connection . . . "**

| Term | MPH | Apple | Court |
|---|---|---|---|
| "Establishing a secure connection having a first address of the | "Establishing a secure connection having a first address of the mobile terminal as a | Indefinite | Indefinite |

| | | | |
|---|---|---|---|
| mobile terminal as a first endpoint and a gateway address of the security gateway as a second endpoint . . . the mobile terminal sending a secure message in the secure connection from the second address of the mobile terminal to the other terminal via the security gateway" | first end-point and a gateway address of the security gateway as a second end-point / the mobile terminal sending a secure message in the secure connection from the second address of the mobile terminal to the other terminal via the security gateway [wherein the secure connection is between the mobile terminal and the security gateway protecting the other terminal]." | | |

*Id.* at 16 (quoting the '581 patent, 10:54-11:3).

Apple argues this term is indefinite, largely because "secure connection" lacks a proper antecedent basis, since "the plain language [ ] states that the secure connection ends at the other terminal." ECF No. 119 (Apple's Opposition to MPH's Motion for Reconsideration ("Opposition")), at 5:16-17. MPH argues that claims 6, 7, and 8 of the '581 patent are not invalid as indefinite because the term "the secure connection" in the disputed phrase, "the mobile terminal sending a secure message in *the secure connection* from the second address of the mobile terminal to the other terminal via the security gateway," does not lack an antecedent. *See* ECF No. 118 (MPH's Motion for Reconsideration ("Motion")), at 6:18-7:5. MPH explains the secure connection in the last claim element is between the mobile terminal and the security gateway which protects the other terminal. This, MPH argues, supports revising the portion of the Court's Order finding the language in the '581 patent claims 6, 7, and 8 indefinite. *Id.* at 7:1-5.

In the Order Construing Claims, the Court states the standard for indefiniteness: "[A] term is indefinite if it 'fail[s] to inform . . . those skilled in the art about the scope of the invention.' *Nautilus 2014*, 572 U.S. at 898-99. And, without an antecedent, a term risks indefiniteness. *See Bushnell Hawthorne*, 813 F. App'x at 526–27." *Id.* at 16.

2

The Court continues:

> Here, "the secure connection" lacks an antecedent. The first "secure connection" is between "a first address of the mobile terminal" and "a gateway address." '581 patent, 10:54–56. But the second "secure connection" is between "the second address of the mobile terminal" and "the other terminal." *Id.* at 11:1–3. By the claim's plain language, the secure connections are different, and the second secure connection thus lacks an antecedent. Underlining that conclusion is the claim's description of the secure connection "chang[ing]" during this process. *Id.* at 10:64–67. Based on the foregoing, the language is indefinite.

*Id.* at 16-17.

On June 21, 2024, the Court granted ECF No. 118, MPH's Request to Revise the Court's Order Construing the '581 Patent Claims 6, 7, and 8 under Fed. R. Civ. P. 54(b), which Apple opposed in ECF No. 119. A few months after the Court issued its order, in March 2024, MPH filed a statement of recent decision that MPH alleges is pertinent to the Court's reconsideration of its Order Construing Claims. ECF No. 122 (Statement of Recent Decision). Attached to that statement is *Maxwell, Ltd. v. Amperex Tech. Ltd.*, 94 F.4th 1369 (Fed. Cir. 2024). But *Maxwell* does not support the claim language is definite under these circumstances. In *Maxwell*, there are no contradictory terms making the language indefinite, whereas here, there are.

The *Maxwell* Court explains that for the first limitation, there is a requirement that the substance *can be* cobalt…or it *can be* nickel or manganese. For the second limitation, however, there *must be* at least some amount of cobalt (30%) even if, pursuant to the first limitation, there is another transitional element that is nickel or manganese. *See id.* at 1372-73. In other words, the transitional element can be 100% cobalt, or a mix of cobalt and another element (nickel or manganese) as long as at least 30% of the mix is cobalt. *See id.* The *Maxwell* court explains later: "Claim limitations do not grant options. They state requirements—conditions that must be met for a product or process (as the case may be) to come within the claim's protected zone of exclusivity. If there are two requirements, and it is possible to meet both, there is no contradiction." *Id.* at 1373. As such, no internal inconsistency exists in *Maxwell* since in that case, the claim language

3

was internally consistent.  Here, by contrast, there is internal inconsistency since the secure connection is redefined and changing throughout and is therefore not definite because the limitation "fail[s] to inform…those skilled in the art about the scope of the invention." *See Nautilus 2014*, 572 U.S. at 901.

As stated above, the Order explains that the "first 'secure connection' is between 'a first address of the mobile terminal' and 'a gateway address.' The '581 patent, 10:54–56.  But the second 'secure connection' is between 'the second address of the mobile terminal' and 'the other terminal.' *Id.* at 11:1–3.  By the claim's plain language, the secure connections are different, and the second secure connection thus lacks an antecedent." ECF No. 109 (Order Construing Claims), at 16-17.  Because of these multiple uses of "secure connection," it is unclear from the Claim Language where the secure connection begins and ends.  A secure connection that ends at the security gateway cannot also end at the other terminal; and, that terminal cannot receive a secure message absent a secure connection.  As such, internal consistency is lacking.

The Court could fill in some gaps and read the claim language the way that MPH would like the Court to do so.  But the Court is not permitted to re-write claim language to make it internally consistent.  Moreover, the date of the '581 patent is May 3, 2011, and it was based on the parent patent, the '810 patent.  ECF No. 95-7 ('581 patent).  This means that both the '581 and '810 patents have dates before the *Nautilus 2014* decision.  The *Nautilus 2014* decision changes the "insolubly ambiguous" and "amenable to construction" formulations for indefiniteness since that "terminology can leave courts and the patent bar at sea without a reliable compass.[1]" *Nautilus (2014)*, 572 U.S. at 912 (brackets added) (footnote omitted).  Justice Ginsburg states that "[i]t cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Id.* at 911.  Additionally, the point of refining the definiteness standard serves the purpose of checking "patent applicants fac[ing]

4

powerful incentives to inject ambiguity into their claims. *See* Brief for Petitioner 30-32 (citing patent treatises and drafting guides). *See also* Federal Trade Commission, The Evolving IP Marketplace: Aligning Patent Notice and Remedies With Competition 85 (2011) (quoting testimony that patent system fosters 'an incentive to be as vague and ambiguous as you can with your claims' and 'defer clarity at all costs')." *Id.* at 910 (emphasis added).

MPH cites to *X One, Inc. v. Uber Tech., Inc.*, 440 F. Supp. 3d 1019, 1034 (N.D. Cal. 2020) and *Microprocessor Enhancement Corp. v. Texas Inst*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) to argue that the language "***the*** secure connection," in the last step is assumed to refer back to the first-appearing "a secure connection" between the mobile terminal and security gateway in the claim's first step." ECF No. 118 (Motion), at 19:2-4. However, both of those cases were decided before *Bushnell*. And, *Bushnell* is more on point since it discusses different IP addresses. Given the foregoing, the Court finds Apple has shown sufficient evidence that the Claim Language weighs in favor of finding of indefiniteness.

Apple argues the Court may end the inquiry after reviewing the Claim Language. MPH disagrees and contends that there is "clear support in the specification and prosecution history for MPH's position that 'the secure connection' in the final limitation needs to extend only to the security gateway and not beyond." *Id.* This is important given MPH's position that the specification supports that the core solution of the '581 patent avoids the prior art problem of redoing key exchanges every time a mobile computer moves. That is, with this patent, the goal is that key exchanges do not have to be redone because the same secure connection could be used after that secure connection is simply updated to a new address. The Court agrees with MPH that the specification should be reviewed. *Nautilus 2014*, 572 U.S. at 920.

### *Specification*

Apple argues the disclosures in the specification are inconsistent with MPH's position that "the secure connection" in the final limitation ends at the security gateway. ECF No. 121 (Reply),

at 12 (citing ECF No. 119 (Opposition, at 8-9)).  For support, Apple points to the Abstract, which states: "When the first terminal moves from the first address to the second address, the connection is changed to be between the second address and to ***the other terminal***….".  ECF No. 119 (Opposition), at 9 (citing '581 patent, Abstract) (emphasis added).  Apple also states that MPH's position is inconsistent with the Summary of the Invention, which describes "a secure connection between the first address of the first terminal and ***the other terminal.***" *Id.*  Apple points to the Technical Field section, which also states the secure connection ends at "***the other terminal***." *Id.* at 1:22-24 (emphasis added).

MPH does not appear to address the Technical Field section, though MPH does point out that Apple's focus on the "other terminal" ignores the Summary of Invention's statement that "the other terminal can be a security gateway protecting one or more computers," and this possibility shows that there is no inconsistency since it *can be* the security gateway.  ECF No. 121 (Reply), at 12:5-8.  However, "[c]laim limitations do not grant options.  They state requirements—conditions that must be met for a product or process (as the case may be) to come within the claim's protected zone of exclusivity.  If there are two requirements, and it is possible to meet both, there is no contradiction." *Maxwell*, 94 F.4th at 1373.  So, if there are options and not requirements, then limitations "fail to inform…those skilled in the art about the scope of the invention." *See Nautilus 2014*, 572 U.S. at 901.

### *Prosecution History*

MPH would like the Court to consider the prosecution history.  While prosecution history can provide some assistance in construing claims, the claim language (and specification) is much more important.  *See Phillips v. AWHC Corp.*, 415 F.3d 1303, 1312, 1317 (Fed. Cir. 2005) (en banc) (claims are "of primary importance" whereas the prosecution history is "less relevant to claim construction" due to its "ambiguity").  "Because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that

6

negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1317.  This lower importance is demonstrated by courts "consider[ing] the patent's prosecution history, if it is in evidence." *Id.*

Regardless of whether it is in evidence or not, the Court will address MPH's argument that the prosecution history supports a finding that the secure connection stays the same and does not change.  MPH explains that "the invention was distinguished over prior art that required ***a new*** secure connection be established when the mobile computer moved…Unlike the prior art, the inventors indicated that, in the '581 patent, ***the "same" secure connection*** between the mobile terminal and the security gateway is used throughout the claim, only with an updated address definition based on the mobile terminal's changed address." ECF No. 121 (Reply), at 14:9-14.  MPH also argues the amendments the applicants made "to the parent of the '581 patent 'leave no doubt' that the secure connection ends at the security gateway." ECF No. 118 (Motion), at 16.

Apple argues that MPH's argument regarding the prosecution history is the same as MPH's argument in connection with the specification, and it does not support definiteness.  *See* ECF No. 119 (Opposition), at 11-13.  Under MPH's argument, the secure connection being the same does not indicate where that connection ends.  Apple argues that MPH had a chance to amend their Claim Language to make it clear that the security gateway was the secure connection end point; but MPH did not.  *See* ECF No. 119 (Opposition), at 13 (citing ECF No. 95-12, at 2:28-30) (emphasis added).  As a result, there is sufficient evidence to show the prosecution history supports the language being indefinite.

Additionally, MPH contends the Patent Office's professionals provide evidence showing that the "meaning and scope of the '581 patent claims can be, and indeed were, ascertained by a POSITA including the Patent Office's professionals and Apple's own expert." ECF No. 121 (Reply), at 6. MPH further argues that Apple is estopped from asserting the invalidity defense of indefiniteness given the stance its expert took during the IPR proceedings and the outcome of

7

those proceedings.  However, under relevant Federal Circuit case law, PTAB is not necessarily supposed to decide indefiniteness unless it is "logically impossible for the Board to reach such a decision." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813 (Fed. Cir. 2021) ("Importantly, it is not always impossible to adjudicate a prior-art challenge, one way or the other, just because some aspect of a claim renders the claim indefinite."); *Nchia Corp. v. DSS, Inc.*, 2023 WL 7211097, *3 (Fed. Cir. Nov. 2, 2023) ("[W]e have held the Board can render prior art patentability determinations even if claims are indefinite. *Samsung Elecs. Am. Inc. v. Priusa Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020) (explaining indefiniteness does not 'necessarily preclude the Board from addressing patentability' on other grounds).").  This means that it is possible PTAB can find patentability notwithstanding the claims for the patent being indefinite.

In this case, PTAB did not decide indefiniteness as to the '581 patent, only patentability, as there is a different standard for patentability than there is for indefiniteness. *Apple Inc. v. MPH Techs. Oy*, No. IPR2019-00820, 2020 WL 5735601 (P.T.A.B. Sep. 24, 2020), *aff'd*, 2022 WL 4103286 (Fed. Cir. 2022); ECF No. 66-8 (Exhibit G to Declaration of Ashley E. Lavalley in Support of Plaintiff MPH Technologies Oy's Unopposed Motion to Lift Stay ("PTAB Decision re '581 Patent"), at 3 ("…[Apple] has not shown by a preponderance of the evidence that claims 4 and 6-8 are unpatentable."); *id.* at 11 ("A claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time of the invention to a person having ordinary skill in the art. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007).  The question of obviousness is resolved based on underlying factual determinations, including (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of non-obviousness, if present.[]"). *Id.* at 11-12 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18).

Apple had the burden during the IPRs to show by a preponderance of evidence the

*unpatentability* of the claims. *See Apple, Inc. v. MPH Techs. Oy*, 2023 WL 5031041, at *11. But this stage, it has the burden to show by clear and convincing evidence the *indefiniteness* of the claims. *See* 2024 WL 1298606 (Fed. Cir. 2024); 2023 WL 5059716, at *1 (P.T.A.B. May 11, 2023); 2022 WL 4103286 (Fed. Cir. 2022). Accordingly, courts may still make a finding as to indefiniteness notwithstanding a PTAB's finding of patentability. In other words, as stated above, an invention that is patentable can be indefinite.

MPH also contends that "[d]uring the '581 patent IPR, **Apple's own expert** interpreted the claims as requiring only that the secure message is sent in the secure connection between the mobile terminal and the security gateway, at which point the IPSec outer IP header may be stripped off and the inner packet forwarded to the other terminal. Ex. D, *Apple Inc. v. MPH Techs. Oy*, No. IPR 2019-00820, Exhibit 1002, Decl. of David Glodschlag PHS.D, ¶ 84." ECF No. 121 (Reply), at 11, n. 2 ("It was well-known in the art that operating IPSec in tunnel mode would serve the purpose of forwarding messages from a security gateway to an 'other terminal.' The Technical Background of the '581 patent acknowledges this understanding and explains that when a firewall (i.e., a security gateway) operating in tunnel mode receives a packet, 'the outer IP header is stripped off and the inner packet is delivered to the other host.' 581 patent, 3:61-62."). Because of Apple's expert's position during the IPR proceedings, MPH argues Apple should be estopped from taking a position during this stage of the proceedings that MPH claims is clearly inconsistent with the position its expert took during the IPR proceedings.

Apple responds that its expert's position is not clearly inconsistent with Apple's position that the relevant claim language is indefinite as shown by the limitations. This is because if there is a limitation that says the secure connection is between the first address of the first terminal and the gateway, and then there is a subsequent limitation that says the secure connection is from the second address of the first terminal to the second terminal, or the other terminal, then that could still present an indefiniteness issue. There is an argument to be made that a POSITA would fill in

the gap and interpret the subsequent limitation to mean that the secure connection is the same secure connection when it goes *through* the gateway to the other terminal regardless of any address changes. Apple's position is that the Claim Language read in light of the Specification and Prosecution History do not make it clear that the secure connection does not change during that process. Apple continues to explain that since the secure connection can end either at the gateway or the other terminal, it is not clear it is the same secure connection. That is important because if it is not the same secure connection, then the solution that the new invention is supposed to solve is not really solved. Apple's argument is basically that its expert's position during the IPR proceedings do not conflict with Apple's position that the language is indefinite.

Given the above, Apple has shown by clear and convincing evidence that the Claim Language, viewed in light of the Specification and Prosecution History, support a finding that the language in the '581 Patent Claims 6, 7, and 8 is indefinite.

This order resolves ECF Nos. 109 and 118.

**IT IS SO ORDERED.**

Dated: August 16, 2024

TRINA L. THOMPSON
United States District Judge